OPINION OF THE JUSTICES TO THE HOUSE
OF REPRESENTATIVES.

*Constitutional Law,* Opinions of the Justices, "Home Rule Amendment,"
General law, Municipalities. · *Municipal Corporations,* Form of
government, Charter, "Home Rule." *Southbridge.*

The Justices requested to be excused from answering a question pro-
pounded by a branch of the General Court merely asking whether a
specific pending bill would "be unconstitutional because of *its* vague
and indefinite application." [851-852]

With respect to the town of Southbridge following approval by its voters
of the Southbridge Home Rule Charter, which created a town council
and the appointive office of town manager, a provision of a pending
bill in the General Court that the town manager shall have all the
powers and duties conferred on a board of selectmen would not be an
unconstitutional delegation of authority to an appointed official.
[852-854]

With respect to the town of Southbridge following approval by its voters
of the Southbridge Home Rule Charter, the General Court, by a spe-
cial law enacted on a petition filed or approved as provided in the first
paragraph of § 8 of art. 89 of the Amendments to the Massachusetts
Constitution, has the power to enact a pending bill providing, with
exceptions, that all the General Laws relating to towns shall be ap-
plicable to the town of Southbridge. [855-856]

On July 29, 1975, the Justices submitted the following answers to questions propounded to them by the House of Representatives.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in an order adopted by the House on June 5, 1975, and transmitted to us on June 12, 1975. The order recites that there is pending before the General Court House Bill No. 5812, entitled "An Act clarifying the charter of the town of Southbridge," and that grave doubt exists as to its constitutionality, if enacted into law. A copy of the bill was transmitted to us with the order. The bill provides as follows:

"SECTION 1. The town of Southbridge shall be governed by a charter known as the Southbridge Home Rule Charter which was approved by the voters of the town of Southbridge at an election held March second, nineteen hundred and seventy-three.

"SECTION 2. Except as otherwise provided in said charter, the town council created thereby shall have all the powers and duties conferred on town meetings, and the town manager shall have all the powers and duties conferred on a board of selectmen.

"SECTION 3. Except where inconsistent with said charter, all provisions of law applicable to towns shall be applicable to the town of Southbridge and said charter shall govern unless said law specifically provides for the contrary.

"SECTION 4. This act shall take effect upon its passage."

The questions are:

"1. Would the enactment of House, No. 5812, a petition with local approval, which provides that the town council in Southbridge, a continuing legislative body, shall have all the powers and duties of a town meeting be

unconstitutional because of its vague and indefinite application?

"2. Would the enactment of said bill which provides that the town manager, an appointed position, of Southbridge have all the powers and duties of a board of selectmen be an unconstitutional delegation of authority to an appointed official?

"3. If the town of Southbridge is a city, is it constitutionally competent for the General Court to provide that all the laws relative to a town shall continue to apply to said municipality, thereby, in effect, creating a form of government which is neither a town or city and for which no provision is made under the Constitution of the commonwealth?"

We invited briefs to be filed by interested persons. In response to this invitation, briefs were filed by the municipality of Southbridge, Massachusetts League of Cities and Towns and the Massachusetts Selectmen's Association, a citizen of the municipality of Southbridge, and members of two law firms involved in the municipal law field.

1. The first question refers to House Bill No. 5812 as a petition with local approval,[1] and asks whether its grant to a town council of the powers and duties of a town meeting is "unconstitutional because of its vague and indefinite application."

The vice of vagueness in the due process sense is generally said to be "the risk of unfair prosecution and the potential deterrence of constitutionally protected conduct." *Cramp*

---

[1] Article 2, § 8, of the Amendments to the Constitution of the Commonwealth, as supplanted by art. 89 of the Amendments (hereinafter referred to as the Home Rule Amendment) provides the conditions under which the General Court may enact special laws in relation to cities and towns. We assume the instant bill, labeled a petition with local approval, has met the requirements of clause (1) of the first paragraph of § 8. Failure to comply with § 8 would render the bill unconstitutional. *Belin v. Secretary of the Commonwealth*, 362 Mass. 530, 533 (1972).

v. *Board of Pub. Instruction of Orange County*, 368 U. S.
278, 283 (1961). *Connally* v. *General Constr. Co.* 269
U. S. 385, 391 (1926). *Baggett* v. *Bullitt*, 377 U. S. 360
(1964). *Dombrowski* v. *Pfister*, 380 U. S. 479 (1965). *Com-
monwealth* v. *Carpenter*, 325 Mass. 519, 521 (1950).
*Alegata* v. *Commonwealth*, 353 Mass. 287 (1967). Cf.
*O'Connell* v. *Brockton Bd. of Appeals*, 344 Mass. 208, 210
(1962); *Board of Appeals of Hanover* v. *Housing Appeals
Comm. in the Dept. of Community Affairs*, 363 Mass. 339,
363-364 (1973); *Henkes* v. *Fisher*, 314 F. Supp. 101, 107
(D. Mass. 1970), affd. 400 U. S. 985 (1971). Because no
such risks appear to be attendant here, it is not at all clear
what question 1 means by "unconstitutional" and "vague."
No reference is made to any specific provision of either the
Federal or the State Constitution. See *Opinion of the
Justices*, 333 Mass. 783, 791 (1955). "[I]mportant questions
of law must be explicitly stated: they cannot be left to
equivocal implications." *Answer of the Justices*, 299 Mass.
617, 620 (1938). Asking us to decipher the implications of
the bill with respect to the many provisions of the general
laws relating to town meetings is like asking "us to examine
a long and complicated bill . . . to ascertain whether we can
discover questions to be raised as to . . . [its] validity," and
this we cannot do. *Opinion of the Justices*, 239 Mass. 606,
612 (1921).

Because question 1 is general and points out no particular
question, we request to be excused from answering it. *Opin-
ion of the Justices*, 145 Mass. 587, 592 (1887). *Opinion of
the Justices*, 349 Mass. 794, 801 (1965).

2. By § 2 of the bill, the town manager of Southbridge is
granted the powers and duties of a board of selectmen.
Question 2 refers to the town manager as an appointed posi-
tion, and asks whether this provision of the bill is an un-
constitutional delegation of authority to an appointed of-
ficial.

We assume that the source of the doubt expressed in this
question is the appointive nature of the position of town
manager, rather than concern over the delegation of con-

stitutionally allocated powers under art. 30 of the Declaration of Rights of the Massachusetts Constitution. This is so because by § 2 of the bill, the General Court is not delegating *its* legislative powers to a town manager; it is simply defining the powers and duties of a newly created municipal office by reference to an existing municipal office.

The issue, as we read the question, then, is whether the General Court has the power to define the duties of an appointive municipal office by reference to those of an elective municipal office.

Under former art. 2 of the Amendments to the Massachusetts Constitution, the General Court had "full power and authority to erect and constitute municipal or city governments, in any corporate town." In *Moore* v. *Election Commrs. of Cambridge*, 309 Mass. 303, 321-322 (1941), we said that the General Court had the "broad power to provide that officers of a city . . . be appointed . . . rather than elected by the inhabitants of the city." See *Commonwealth* v. *Plaisted*, 148 Mass. 375, 386-387 (1889). Under this regime, the General Court created two forms of city government with provisions for an appointed city manager. G. L. c. 43, §§ 89, 103.

Article 2 of the Amendments, of course, was annulled and replaced by the Home Rule Amendment, which limited the power of the General Court to legislate with respect to municipalities. By § 2 of the Home Rule Amendment, "[a]ny city or town . . . [has] the power to adopt or revise a charter or to amend its existing charter . . . [the provisions of which] shall not be inconsistent with the constitution or any laws enacted by the general court in conformity with the powers reserved to the general court by section eight." The only other limitations imposed by § 2 are that no town of fewer than 12,000 inhabitants shall adopt a city form of government, and no town of fewer than 6,000 inhabitants shall adopt a representative town meeting form of government.

Accordingly, unless prohibited by the Constitution, laws enacted by the General Court pursuant to § 8, or by § 2 itself, a municipality could provide for an appointed town manager by its own charter. To determine whether the General Court can do the same, we turn to § 8.

By § 8 the General Court has the power to act in relation to cities and towns by special laws enacted "on petition filed or approved by the voters of a city or town, or the mayor and city council, or other legislative body, of a city, or the town meeting of a town, with respect to a law relating to that city or town." We are informed that the instant bill is the result of a petition by the town council of Southbridge. We assume, without deciding, that the town council is the legislative body of Southbridge and the bill is in compliance with the petition procedure of § 8. See *Opinion of the Justices*, 365 Mass. 655, 658 (1974). Section 8 allows the General Court to "provide optional plans of city or town organization and government under which an optional plan may be adopted or abandoned" by the voters of the city or town. See, e.g., *Chief of Police of Dracut* v. *Dracut*, 357 Mass. 492, 498, fn. 2 (1970). In § 8, as in § 2, it is provided that towns of fewer than 12,000 may not be authorized to adopt a city form of government, and towns of fewer than 6,000 may not be authorized to adopt a representative town meeting form of government. But in acting in relation to cities and towns, there is nothing in § 8 which requires municipal offices to be held by elected rather than by appointed officials. Therefore, unless there is another provision of the Massachusetts Constitution which mandates elective municipal offices, the General Court, under § 8, may create appointive municipal offices. Our Constitution creates many elective offices, but none of them appears to be at the municipal level.[2]

Since there is no constitutional impediment to the creation of appointive rather than elective municipal offices, we answer question 2, "No".

---

[2] See, e.g., Massachusetts Constitution, Part II, c. 1, §§ 2, 3; c. 2, §§ 1, 2.

3. By § 3 of the bill, all laws applicable to towns are to be applicable to Southbridge, except where inconsistent with its charter and except where laws applicable to towns specifically provide to the contrary.

Question 3 asks whether the General Court can validly enact such a provision if Southbridge is a city (presumably because of its representative form of government) where the consequence is to create a form of government which is neither a town nor a city and for which there is no provision under the Massachusetts Constitution.

We repeat what we said in response to question 2: under the Home Rule Amendment, municipalities (§ 2) and the General Court (§ 8) have broad, though not unlimited, powers to create and change forms of municipal government. We deal here with the power of the General Court under § 8, and not the power of a municipality under § 2. The form of government provided for Southbridge under the bill cannot be said to be an optional plan provided by the General Court as envisioned by the second paragraph of § 8. That provision contemplates the design of standard forms of municipal government by the General Court and made available for voluntary adoption by a municipality, such as those created in the pre-home rule period. See G. L. c. 43 (six standard forms of city government) and G. L. c. 43A (standard form of representative town meeting government).

On the other hand, by the first paragraph of § 8, the General Court has the power to act in relation to cities and towns by special laws enacted on petition as therein provided. Though the Home Rule Amendment refers to cities and towns (see, e.g., §§ 1, 2, 8), the words are nowhere there defined. *Opinion of the Justices,* 365 Mass. 655, 657-658 (1974). We have not been bound by a municipality's self-characterization as a "city" or a "town," and have instead looked to the substance of the form of government. *Id.* at 658. *Del Duca* v. *Town Admr. of Methuen, ante,* 1, 9, fn. 6 (1975). It is our constitutional duty to do so since the words "town" or "city" are used in

the Constitution but are not defined therein. But since the General Court has the power under § 8 to act in relation to cities and towns by special laws enacted on petition,[3] it has the power to define which of *its* General Laws relating to municipalities will be applicable to a given municipality. As we read it, this is all § 3 of the bill does. That it does so in one broad stroke rather than item by item does not make it unconstitutional.

It has been argued that a rational system of classification of municipalities and some general uniformity is desirable. Indeed, a reasonable degree of uniformity was constitutionally required in the pre-home rule era. See *Opinion of the Justices,* 328 Mass. 674, 677 (1952). Under the second paragraph of § 8 of the Home Rule Amendment, the General Court may provide optional plans of city or town government to achieve a reasonable degree of uniformity. Under the first paragraph of § 8, the General Court could require a reasonable degree of uniformity, and under § 2 no municipal charter could be inconsistent with such requirements. But there is nothing in the Home Rule Amendment, except population limitations not here in issue,[4] which compels the General Court to require a reasonable degree of uniformity.

To the extent that question 3 asks whether by special law enacted on petition the General Court has the power to provide that all its laws applicable to towns shall apply to Southbridge, we answer it, "Yes".

---

[3]We note that such special laws can be repealed by a city or town, under G. L. c. 43B, § 19, and therefore a city or town, such as Southbridge, which petitions for special legislation does not surrender its power under § 2 of the Home Rule Amendment to adopt, revise or amend its charter.

[4]The 1971 population of Southbridge was 16,631. Manual for the General Court 1973-1976, State Census 1971, p. 293.

In summary, we request to be excused from answering question 1, we answer question 2, "No"; and, subject to the limitation set forth above, we answer question 3, "Yes".

G. JOSEPH TAURO
PAUL C. REARDON
FRANCIS J. QUIRICO
ROBERT BRAUCHER
EDWARD F. HENNESSEY
BENJAMIN KAPLAN
HERBERT P. WILKINS