CITY OF SOMERVILLE *VS.* SOMERVILLE MUNICIPAL
EMPLOYEES ASSOCIATION.

No. 10-P-1283.

Middlesex. July 12, 2011. - October 25, 2011.

Present: MILLS, GREEN, & KATZMANN, JJ.

*Arbitration,* Confirmation of award, Authority of arbitrator, Arbitrable ques-
tion, Collective bargaining. *Civil Service,* Applicability of provisions, Col-
lective bargaining.

A Superior Court judge properly concluded that an arbitrator did not exceed
his authority in finding that a city had violated a collective bargaining
agreement (agreement) by failing to pay out-of-grade compensation to a
non-civil service member of a union, where the provision of the agreement
permitting such compensation did not violate G. L. c. 31, § 71, of the civil
service law, in that the employee at issue did not receive compensation for
service rendered in a civil service position when she filled in temporarily
for a coworker who was a civil service employee. [688-694] GREEN, J.,
dissenting.

CIVIL ACTION commenced in the Superior Court Department on
October 21, 2009.

A motion to vacate an arbitration award was heard by *Leila
R. Kern,* J.

*Matthew J. Buckley,* Assistant City Solicitor, for the plaintiff.

*James F. Lamond* for the defendant.

KATZMANN, J. The city of Somerville (city) appeals from a
judgment entered by a judge of the Superior Court confirming
an arbitration award in favor of the Somerville Municipal
Employees Association (association). The judge ruled that the
arbitrator did not exceed his authority when he found that the
city had violated the collective bargaining agreement (CBA)
with the association for failure to pay Lisa Ann Pefine out-of-
grade pay. The city argues that the judge erred in denying its
motion to vacate the arbitrator's award and that the award must

be vacated because it orders conduct prohibited by civil service law, G. L. c. 31. We affirm.

*Background.* Since 2007, Pefine has held the position of inspectional coordinator II within the city's inspectional services department. She is a non-civil service member of the association in bargaining unit D. She works in a two-person office. Her coworker, Donna Pickett, holds the position of administrative assistant, a higher-paying, civil service position, and is a member of the association in bargaining unit B. The positions held by both Pefine and Pickett are clerical in nature. Prior to February, 2008, when Pickett was not at work for a variety of reasons, such as sick leave and vacation, Pefine would be required to cover for Pickett, and Pefine would apply for "out-of-grade" pay based on the difference between her regular compensation and the regular compensation received by Pickett. On each such occasion she was awarded the out-of-grade compensation, which was paid pursuant to Article XX, § 7, of the CBA. Article XX, § 7, provides in relevant part:

> "Employees who work in higher classifications (i.e. any classification that pays a higher rate of pay than the classification in which the employee regularly works) shall receive the rate of pay of the higher classification for all days so worked computed from the first day. In order to receive such pay, an employee must file an authorized request for payment form, to be provided by his supervisor, within seven calendar days after having worked in the higher classification.

> "All work performed under this subsection must be approved in advance and in writing by the Mayor or his designee, and no employee shall be required to perform such work without such advance written approval."

Since February, 2008, Pefine's Article XX, § 7, requests for out-of-grade pay for work completed on behalf of her higher paid, bargaining unit B, civil service coworker were denied. In response to these denials, the association filed a grievance requesting out-of-grade compensation for Pefine. After exhausting the formal grievance procedure, the issue went to arbitration. The arbitrator found for the association and remanded the issue of remedy to the parties.

*Discussion.* "Because arbitration is a product of the parties' agreement to be bound by the decision of a nonjudicial neutral arbitrator, '[a] matter submitted to arbitration is subject to a very narrow scope of review.' " *Duxbury* v. *Rossi*, 69 Mass. App. Ct. 59, 61-62 (2007), quoting from *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990). The court's review is "strictly bound by an arbitrator's findings and legal conclusions, even if they appear erroneous, inconsistent, or unsupported by the record at the arbitration hearing." *Lynn* v. *Thompson*, 435 Mass. 54, 61 (2001), cert. denied, 534 U.S. 1131 (2002). "Absent fraud, errors of law or fact are not sufficient grounds to set aside an award." *Ibid.*, quoting from *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, *supra.* The Superior Court shall, however, vacate awards if "the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law." G. L. c. 150C, § 11(*a*)(3), inserted by St. 1959, c. 546, § 1. See *Fall River* v. *AFSCME Council 93, Local 3177, AFL-CIO*, 61 Mass. App. Ct. 404, 406 (2004).

We take note of two basic principles regarding the arbitration of collective bargaining disputes. First, "[i]n accordance with the strong public policy favoring the arbitration of disputes, particularly in the context of collective bargaining agreements, . . . courts generally . . . follow[] the rule that the arbitrator's decision should be upheld." *Sheriff of Suffolk County* v. *Jail Officers & Employees of Suffolk County*, 451 Mass. 698, 700 (2008). Second, judicial "analysis begins with the presumption that the collective bargaining agreement compels the outcome directed by the award and ends with a determination whether that outcome materially conflicts with" the asserted conflicting statute. *Somerville* v. *Somerville Mun. Employees Assn.*, 451 Mass. 493, 497 (2008).

A provision in a collective bargaining agreement does not trump a contrary provision of the civil service law, G. L. c. 31. *Dedham* v. *Dedham Police Assn. (Lieutenants & Sergeants)*, 46 Mass. App. Ct. 418, 419-420 (1999). See G. L. c. 150E, § 7(*d*). Material conflicts between collective bargaining agreements and the civil service law "have been found where the 'award by the

arbitrator forces the city to violate the procedures outlined in G. L. c. 31 in regard to the appointment of qualified individuals to civil service vacancies,' thereby producing an appointment compelled by collective bargaining that is prohibited by civil service law." *Fall River* v. *AFSCME Council 93, Local 3177, AFL-CIO*, 61 Mass. App. Ct. at 411, quoting from *Everett* v. *Teamsters, Local 380*, 18 Mass. App. Ct. 137, 140 (1984). See *Somerville* v. *Somerville Mun. Employees Assn.*, 20 Mass. App. Ct. 594, 597, 599-600 (1985) (material conflict existed where arbitrator's award of out-of-grade pay for employees performing job functions of higher, vacant titles effectively promoted employees to higher positions in violation of civil service law). Contrast *Dedham* v. *Dedham Police Assn. (Lieutenants & Sergeants)*, 46 Mass. App. Ct. at 421 (arbitrator did not exceed power by enforcing collective bargaining agreement provision concerning allocation of vacation and shifts by seniority when civil service law and commission's order were silent on that narrow issue, even though order addressed issue of seniority generally); *Fall River* v. *AFSCME Council 93, Local 3177, AFL-CIO, supra* at 410-411 (no conflict where collective bargaining agreement focused on provisional employee's right not to be discharged without justifiable cause until eligibility lists were prepared and civil service statute focused on name-clearing and future employment prospects of employees whose reputations were stained by their discharge). When possible, the court attempts to read the civil service law and the collective bargaining law, as well as the agreements that flow from the collective bargaining law, as a "harmonious whole." *Fall River* v. *AFSCME Council 93, Local 3177, AFL-CIO, supra* at 406, quoting from *Dedham* v. *Labor Relations Commn.*, 365 Mass. 392, 402 (1974).

The city argues that Article XX, § 7, of the CBA is in violation of G. L. c. 31, § 71,[1] of the civil service law, which

___

[1]Section 71, inserted by St. 1978, c. 393, § 11, states, in relevant part:

"The state treasurer, city or town treasurer, or other disbursing officer of the commonwealth or of a city or town with civil service positions *shall not pay any salary or compensation for service rendered in any civil service position whether such payment is made by payroll or bill, or in any other manner, to any person whose name does not appear on the appropriate roster,* as amended from time to time, as the person in such position" (emphasis added).

prohibits compensation for services rendered in a civil service position to persons whose names do not appear on the appropriate roster for that position.[2] The city further claims that Pefine's compensation for work rendered in her coworker's position, in accordance with Article XX, § 7, of the CBA, functions effectively as compensation arising out of an improper original appointment or as a promotional appointment in violation of the civil service statute. We disagree.

The relevant question here, as first clearly formulated during oral argument, is whether Pefine received "salary or compensation for service rendered *in any civil service position*" in violation of G. L. c. 31, § 71. To determine whether Pefine was "in any civil service position," we consider whether she was appointed to a civil service position and whether the position that she was appointed to was vacant. See discussion *infra*.

A "civil service appointment" is defined as "an original appointment or promotional appointment made pursuant to the provisions of the civil service laws and rules." G. L. c. 31, § 1, inserted by St. 1978, c. 393 § 11. "The civil service law, G. L. c. 31, establishes a comprehensive plan for the appointment of individuals to civil service positions, whether on an original or a promotional basis, and whether permanent or temporary." *Somerville* v. *Somerville Mun. Employees Assn.*, 20 Mass. App. Ct. at 597. Here neither party argues that Pefine was eligible for an original appointment,[3] and absent an original appointment, she could not have received a promotional appointment.[4] See

---

[2] "[General Laws] c. 31, § 68, requires the appointing authority to report in writing to the administrator 'any appointment or employment, promotion, demotion, transfer, change in duties or pay, reinstatement,' and a host of other employment changes not here relevant. Based upon these reports, G. L. c. 31, § 71, requires the administrator to prepare rosters of all civil service positions, and of all persons who are legally employed in such positions, whether on a temporary or a permanent basis. The administrator files a copy of each roster with the municipal officer responsible for paying the salaries of a municipality's civil service employees." *Somerville* v. *Somerville Mun. Employees Assn.*, 20 Mass. App. Ct. at 599.

[3] By statute, to be eligible for an "original appointment," an individual must take a civil service examination and be placed on the relevant roster or list for that appointment. G. L. c. 31, §§ 1, 6. If selected from the appropriate list, an individual's appointment must be authorized by the appropriate administrator. G. L. c. 31, § 6.

[4] A "promotional appointment" is the appointment "of a person employed

G. L. c. 31, §§ 7-8. Moreover, absent a civil service appoint-ment, Pefine cannot be considered a "temporary employee."[5] Thus, Pefine was never appointed to a civil service position.

Original and promotional appointments also "presume the existence of a vacancy in the position to which the appointment is made." *Mayor of Lawrence* v. *Kennedy*, 57 Mass. App. Ct. 904, 906 (2003). See *Somerville* v. *Somerville Mun. Employees Assn.*, 20 Mass. App. Ct. at 600 ("When a *vacancy* occurs . . . the assignment of a person employed in one title to a higher title . . . constitutes a promotional appointment which may only be made in compliance with the procedures set forth in the civil service law. Otherwise, an employer could circumvent the require-ments of the civil service law by simply assigning the duties of the *vacant* higher position to another employee for an indefinite period of time [emphasis added]). While "vacancy" is not defined in G. L. c. 31, see *Mayor of Lawrence* v. *Kennedy, supra,* we note that Pefine's coworker consistently occupied her civil ser-vice position, despite brief excusable absences. Thus, there was no vacant position to which Pefine could have been appointed. Contrast *Goldblatt* v. *Corporation Counsel of Boston*, 360 Mass. 660, 661 (1971) (vacancy created by retirement); *Callanan* v. *Personnel Administrator for the Commonwealth*, 400 Mass. 597, 598-599 (1987) (vacancies anticipated due to internal promo-tions); *Somerville* v. *Somerville Mun. Employees Assn., supra* at 595 (vacancy created by retirement).[6]

in one title to a higher title in the same or a different series, or to another title which is not higher but where substantially dissimilar requirements prevent a transfer," pursuant to the civil service rules. G. L. c. 31, § 1.

[5]A "temporary employee" is defined as a "person who is employed in a civil service position, after a civil service appointment, for a specified period of time or for the duration of a temporary vacancy." G. L. c. 31, § 1.

Although the civil service law does not define a minimum length of employ-ment necessary for one to be considered a "temporary employee," we note that case law suggests that temporary appointments are generally longer than a day or week at a time. See *Eastham* v. *Barnstable County Retirement Bd.*, 52 Mass. App. Ct. 734, 738 n.9 (2001) (seven-month period as acting town accountant referred to as a temporary appointment); *Boston* v. *Boston Police Superior Of-ficers Fedn.*, 52 Mass. App. Ct. 296, 297 (2001) (temporary appointments were made of ten, three, and fifteen months in duration). Moreover, we note that the civil service law provides for emergency appointments for up to thirty working days, making it unlikely that the statute intended appointments for less than thirty days to be considered "temporary appointments." See discussion *infra.*

[6]Insofar as the city contends that the arbitrator's award, requiring Pefine to

In short, Pefine never received a civil service appointment and there was no vacant position to which she could have been appointed: she merely filled in temporarily for her coworker. This does not mean that she was thereby rendering service "in any civil service position." We discern no conflict between Pefine's position that under the CBA she was warranted in receiving the higher pay for the fill-in work performed in the absence of her higher classified, higher paid coworker, and that in so doing she was not rendering service in a civil service position where there was no vacant position to be occupied. Moreover, nowhere does the civil service statute stipulate how a non-civil service employee, temporarily filling in for a civil servant coworker who is sick or on vacation, should be compensated. In contrast, the CBA provides clear, unambiguous language for this exact situation. The CBA and the statute may be read harmoniously because they are designed to address different issues.[7]

---

be paid at a higher rate, usurps the authority of the mayor as the civil service appointing authority "to make appointments and promotions," that claim must fail because there was no appointment or promotion here.

The arbitrator also rejected the city's claim under the CBA that out-of-grade pay was not owed to Pefine because the city's mayor had not approved the payment before she performed Pickett's duties. The arbitrator determined while that "[w]hile the [c]ity is free to require before-the-fact approval or tolerate after-the- fact approval, it is not free to require an individual to cover for an absent employee in a higher classification and then negate compensation based on the theory that no mayoral approval was obtained before the fact. . . . Section 7 requires out-of-grade compensation be paid that individual for that work in a higher classification." On appeal, the city does not argue that the CBA itself prohibited out-of-grade pay to Pefine. We thus do not address that contention.

[7]Moreover, the payment of the out-of-grade compensation is not inconsistent with the tenor of civil service law provisions governing emergency appointments, which need not comply with the civil service requirements. "Under G. L. c. 31, § 31, an appointing authority, without submitting a requisition to the administrator and without complying with other provisions of the civil service law, may make an emergency appointment to a civil service position for not more than thirty working days during a sixty-day period, provided the circumstances necessitating the appointment could not have been foreseen and the public business would be seriously impeded by the time lapse incident to the normal appointment process. The appointing authority must, however, immediately notify the administrator in writing of the reasons for the appointment and its expected duration. Section 31 also provides that, with the administrator's consent, an emergency appointment may be renewed for an additional thirty working days but that no person is permitted to receive more

We further note that the record does not reflect that the out-of-grade compensation here was designed to "circumvent the requirements of the civil service law." *Somerville* v. *Somerville Mun. Employees Assn.*, 20 Mass. App. Ct. at 602. Nor does the record reflect that the out-of-grade compensation here "breeds favoritism, which tends to undermine the purposes of the civil service law — '[t]o secure the best qualified persons available for all positions in the state and local service, encouraging competition and offering an opportunity for all qualified persons to compete.' " *Ibid.*, quoting from *Sholock* v. *Civil Serv. Commn.*, 348 Mass. 96, 99 (1964). Here, there were only two people in the office performing clerical duties, and there were no other eligible employees who were bypassed when Pefine was required to fill in for her absent coworker, Pickett. Nor is this a situation where Pefine sought out opportunities to take over the duties of Pickett to earn more money; Pefine was required to take over the work of her colleague when that colleague was ill or on vacation. The subject of compensation for duties associated with a higher paid union position is a proper issue for collective bargaining. *Dedham* v. *Dedham Police Assn. (Lieutenants & Sergeants)*, 46 Mass. App. Ct. at 420-421. See *Secretary of Admn.* v. *Massachusetts Org. of State Engrs. & Scientists*, 408 Mass. 837, 839 (1990) (nothing inherently unenforceable about pay term in collective bargaining agreement that regulates wages to be paid to someone directed to perform duties of higher-rated position). Moreover, the city agreed to the additional out-of-grade pay compensation for its union employees. See *Fall River* v. *AFSCME Council 92, Local 3177, AFL-CIO*, 61 Mass. App. Ct. at 409. If the city no longer wishes to pay additional out-of-grade pay as called for by Article XX, § 7, it may take up the issue when it renegotiates the CBA.

Permitting the association to arbitrate over the contractually agreed upon out-of-grade pay "supports the 'strong' public policies (1) 'favoring collective bargaining between the public employers and employees over the conditions and terms of

than one emergency appointment or one such appointment and renewal in any twelve-month period (except in certain instances where the public health, safety or service would otherwise suffer)." *Somerville* v. *Somerville Mun. Employees Assn.*, 20 Mass. App. Ct. at 599 n.7.

employment,' and (2) encouraging arbitration." *Fall River* v. *AFSCME Council 92, Local 3177, AFL-CIO, supra* at 410 (citations omitted). This strong public "policy is codified in the broad statutory language of G. L. c. 150E, § 6, providing that '[t]he employer and the exclusive representative . . . shall negotiate in good faith with respect to wages, hours, standards [of] productivity, and performance, and any other terms and conditions of employment' in keeping with the objective of creating a collective bargaining agreement." *Somerville* v. *Somerville Mun. Employees Assn.,* 451 Mass. at 496.

In sum, the matter of Pefine's out-of-grade pay was properly arbitrable under the CBA. While the work performed by Pefine fell outside the scope of the civil service law, it was within the framework of the CBA. Taking into consideration our narrow scope of review of the arbitrator's decision and the strong policy favoring arbitration of collective bargaining agreements, the language of the civil service law, and the fundamental purpose of the relevant statutes, we conclude that the arbitrator's award does not intrude on the core concerns of the civil service law, nor is it in violation of binding precedent. The judge properly denied the motion to vacate the arbitration award.

*Judgment affirmed.*

GREEN, J. (dissenting). I respectfully dissent. As the majority correctly observe, the scope of our review is exceedingly narrow. As the majority also correctly recognize, however, "[t]he civil service law is not one of the statutes identified in G. L. c. 150E, § 7(*d*), which may be 'superseded by a collective bargaining agreement[,]' . . . [and] if the civil service law and the collective bargaining provisions conflict, then as matter of law, an arbitrator would act in excess of his powers in seeking to enforce those collective bargaining rights." *Fall River* v. *AFSCME Council 93, Local 3177, AFL-CIO,* 61 Mass. App. Ct. 404, 406 (2004), quoting from *Fall River* v. *Teamsters Union, Local 526,* 27 Mass. App. Ct. 649, 651 (1989).[1]

In my view, the arbitrator's award conflicts with the express

---

[1]For purposes of this discussion, I accept the premise that the arbitrator

provisions of G. L. c. 31, § 71. That provision of the statute states, in relevant part, that "[t]he state treasurer, city or town treasurer, or other disbursing officer of the commonwealth or of a city or town with civil service positions *shall not pay any salary or compensation for service rendered in any civil service position whether such payment is made by payroll or bill, or in any other manner, to any person whose name does not appear on the appropriate roster, as amended from time to time, as the person in such position*" (emphasis added). The majority frame the question posed by the quoted language as requiring determination whether Lisa Ann Pefine was appointed to a civil service position and whether the position to which she was appointed was vacant (ultimately concluding that Pefine was not appointed to any vacant position). However, that question falls outside the contours of § 71, which requires no formal appointment to a vacant position. Instead, the statute prohibits payment of compensation "for services rendered in any civil service position," and, as *Somerville* v. *Somerville Mun. Employees Assn.*, 20 Mass. App. Ct. 594, 597 (1985), observes, "in filling any vacancy, even temporarily, the appointing authority is required to follow the carefully prescribed requirements set forth in c. 31." The majority attempt to dismiss the statutory violation by saying that Pefine did not "render[] service 'in any civil service position' "; "she merely filled in temporarily for her coworker." *Ante* at 692. But the fact remains that the position in which Pefine rendered service, and for which she seeks compensation, is a civil service position for which she did not appear on the appropriate roster.[2]

In my view, the distinction proffered by the majority is one of degree rather than of character. Indeed, in seeking compensation for out-of-grade work Pefine is attempting to have it both

---

acted within his authority in construing the collective bargaining agreement so as to excuse the absence of advance mayoral approval of the out-of-grade compensation sought by Lisa Ann Pefine in the present case, despite the language in the agreement appearing to require such approval.

[2] I note that the present case does not concern the ability or authority of the city of Somerville (city) to assign Pefine temporarily to fill in for an absent coworker. Instead, it simply concerns Pefine's entitlement to out-of-grade pay for her service, pursuant to the statute, and the authority of the arbitrator to award such pay in contravention of the statute.

ways; she describes her service as "work in [a] higher classification[]" in order to invoke the provisions of Article XX, § 7, of the collective bargaining agreement, but insists that she did not "render service in any civil service position" in order to avoid the obvious conflict with G. L. c. 31, § 71.[3]

Finally, to the extent that a purpose of the civil service statute is to prevent favoritism in public employment, see *Somerville* v. *Somerville Mun. Employees Assn., supra* at 602, the concern arises whenever an opportunity for higher compensation arises, whether it is merely temporary (such as service in a position temporarily vacant due to vacation or illness) or permanent. It does not appear from the record in the present case that other eligible employees were bypassed in order to provide Pefine with the out-of-grade service for which she seeks higher compensation, but the statutory prohibition does not depend on the actual presence, and bypass, of a competing eligible civil servant in a particular instance.

Because the arbitrator's award conflicts with the provisions of the civil service statute, it was beyond his authority. I would accordingly reverse the judgment and vacate the award.

---

[3]Tellingly, in its brief the defendant union did not acknowledge or mention — much less attempt to address — the conflict with G. L. c. 31, § 71, even though that conflict was the centerpiece of the city's argument on appeal. At oral argument, the union declined, despite repeated requests, to offer any reconciliation of its position with the statutory language, suggesting only that *Somerville* v. *Somerville Mun. Employees Assn., supra,* and *Secretary of Admn.* v. *Massachusetts Org. of State Engrs. & Scientists,* 408 Mass. 837, 839 (1990) (*MOSES*), declined to declare that the statute should apply to circumstances such as those in this case. But neither of those cases involved the circumstances of the present case; in *MOSES* the employees were seeking compensation for positions they formerly held prior to demotion, so that the conflict with § 71 simply did not arise, and my view that the arbitrator's award of out-of-grade pay to Pefine violates § 71 fits squarely within both the reasoning and the holding of *Somerville.*